The next case this morning is 522-0095, People v. Jose Canizalex. Arguing for the defendant appellant is Thomas Gonzalez. Arguing for the appellee state is Max Booth. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. How are you all? Good morning. Good morning, Justice Boyd. Good morning. Well, thank you. Mr. Gonzalez, are you ready to proceed? I am ready, your honor. Go right ahead. All right. Well, may it please the court. Well, this morning I'm going to focus my remarks on just the actual conflict argument on the part of trial counsel. So I will limit my remarks to that unless your honors have questions on any other issue. So the trial court heard in denying Jose Canizalex's post-conviction relief following evidentiary hearing where he established that trial counsel labored under an actual conflict of interest that adversely affected his performance. This case did not involve a common defense giving strength to a common attack. Instead, this was a case of counsel trying to serve two masters and having to pull punches for one defendant because of conflicting duties of loyalty to the other. It was a case of taking the quicker, more expedient route. The issue here is not whether a separate counsel would have ultimately been successful in defending these cases differently, nor is it whether or not he had previously lost a reasonable doubt argument in a previous appeal. The relevant standard here for assessing an actual conflict is whether counsel's allegiance to one defendant was diluted by conflicting allegiance to another or because of inconsistent obligations. And, of course, whether or not a defect in a strategy or decision making was attributable to that conflict. Here, counsel's allegiance to Canizalex was certainly diluted by his obligation to co-defendant Galavis, which led to a defect in his approach to this entire case, his entire decision making. Canizalex and Galavis, they were definitely not similarly situated and they should not have shared one common defense in a stipulated bench trial, joint bench trial. The major differences and the most important ones are twofold. One, of course, is Canizalex, defendant Canizalex was only a passenger. And number two, and perhaps most significantly, is that it was a co-defendant who actually gave a post-arrest statement, which at the end of the day ended up implicating the defendant, not only implicating, but the court actually utilized it and found it very significant in showing that he's had sufficient control of the car and knowledge of his contents. And as far as other ways that the examples of that manifestation, you know, first of all, conflict-free counsel would have moved to sever this case from the get-go, certainly would not have proceeded to a stipulated bench trial, which again included this very damaging statement, which even the post-conviction court in denying post-conviction release still seemed to be under the mistaken impression that this post-arrest statement on the part of the co-defendant somehow benefited defendant Canizalex when it actually did the opposite. And in particular, the statement about the taking terms of the driving, that in some conflict-free counsel would have certainly objected to that statement coming in at all. Conflict-free counsel would have vigorously argued that unlike the co-defendant, Canizalex as the mere passenger had a plausible defense that based on lack of knowledge and diminished culpability. And the conflict-free counsel would have fully advocated that and during every step of the process, but he was refrained from doing so because that would have been antagonistic to the co-defendant. The chief concern with an actual conflict case is what counsel is, the concern about what he's refrained from doing. And that certainly came into play here. And without the co-defendant, without Gallivis' post-arrest statement, conflict-free counsel certainly would have argued that the defendant had no sufficient control, no sufficient control or knowledge of the meth hidden in the secret compartment. There was nothing incriminating out in plain view when the officer stopped the car. Gallivis was the one who was driving the car. And if we exclude the post-arrest statements, which we submit should have never come in, there was nothing else to tie him to the car. There was no, there would have been no evidence that defendant was ever driving the car. Gallivis was the one who had recently purchased the insurance for the car, a car he didn't even own. He's the one that purchased it in his own name. He's the one that recruited defendant to take the trip with him to quote unquote, keep him company. He was the one- Mr. Gonzalez, let me stop you for a second, if you don't mind. With regard to, you know, recitation of the facts, I think we're all familiar with those, but I have a couple of questions. One, is it of any consequence that this is not appointed counsel? This is privately retained counsel by both the defendant and co-defendant that they chose to hire this person to represent the two of them knowingly? That is correct. Is that, is there any consequence of that? That the defendants knew that they were hiring the same attorney and that the defense would be this type of a defense? Not if the communication wasn't there. And I think there are some unique angles to that. My understanding is that the trial court, at least, did not feel that there was a communication error based on the testimony before it. And we really have a hard time reassessing what the credibility of the witnesses would be to overturn something of that nature. The other question I have, though, is with regard to, you know, the trial court, I believe, found that this was trial strategy. And that, you know, we have to give some deference to the trial court's decision that this is trial strategy. Yeah, you know, if you go with one strategy, it doesn't work. There's always another one that you'd like to try. And it seems like the trial court was thinking that maybe that's what's going on here now. Can you address that? Yeah, just to make sure I understand, when you refer to the trial court, do you mean the trial court, the initial trial court or the post-conviction court? Post-conviction court on the last of those two things. Okay. And just so I'm crystal clear, so your question is centered on what the post-conviction court made in the termination, that counsel's decision was strategic? Yes. Okay. First of all, strategy has to be, it still has to be sound. And one very important thing, very significant thing that the post- conviction court got wrong is the idea, and I got the quote here because I'm still struck by it. The court ruled that no manifestation occurred because the joint representation facilitated the co-defendant statement, quote unquote, being presented to the trial court in Kondosalis' case, which apparently the court found was a benefit to Kondosalis. When you look at the trial court's ruling, it clearly wasn't. It was clearly the opposite. And the trial court specifically relied on two parts of that post-arrest statement. One, the trial court said, okay, yes, Galavis said that he's the one that arranged the $4,000 payment, but I don't believe that part of it. There was no way that he'd make an arrangement like that without Kondosalis also knowing about the arrangement. That's number one. And number two, again, the trial court itself, the initial trial court used the word significant. It found it significant that based on the post-arrest statement of the co-defendant, that knowledge can also be inferred to the defendant based on a statement that he never made, a statement that was not attributed to him, a statement that conflict-free counsel would have strenuously objected to. And what's interesting now getting back to the post-conviction court, the post-conviction court even said that had Galavis been tried separately with separate counsel, the admissibility of the co-defendant statement would have been questionable. Well, I would take it a step further and say no one should have moved there. Conflict-free counsel would have objected to it and there would have been no grounds for any of it to come in. I'm not sure. I hope that answers your question, Justice Barberos. So I think as far as deference, yes, I can see that deference is typically afforded to testimony given at the stage three evidentiary hearing and in particular, counsel's explanation for why he did X, Y, or Z. But when it comes to strategy, it still has to be sound. It's not enough for just counsel to say, well, it's a major strategic decision and then that's the end of it. And yes, I also can see that it's not just a matter of, well, okay, you know, it's a buyer's remorse and he didn't get it right. But this is something that just, I just see, there's nothing reasonable in the realm of reasonableness about allowing a co-defendant statement of this nature to come in against another client. Yeah. And I may not disagree with you. I just wanted to clarify, you know, what the thought process was here. So thank you. Sure, sure. And I see my time is up. Do your honors have any other questions or I just don't want to overstep my time. Well, if you wanted to make a final, you know, little statement before, I know just you had a couple of questions there, go right ahead. Okay. Yeah. I was, I was going to make just one brief comment if I may about the communication because there was, you know, the, the, the post-conviction testimony about the lack of communication and gap, the fact that kind of Zalas defendant is illiterate in both English and Spanish. He only speaks Spanish. We have the testimony about the lay interpreter who for whatever reason, curiously didn't even show up at the evidentiary hearing, but even going back to the trial, there's no exchange about the understanding. Yes, there's, there's the waiver of the stipulated bench trial and all that stuff, explanation of ramifications of that, but there's nothing in the record about the ramifications of a conflict of a potential conflict and the defendant's understanding of the ramifications of that joint representation. We only have that exchange where that, where, where the court asked defense counsel, well, did you talk about joint representation and, and, and post-conviction or trial counsel just says briefly, your honor, it's the state's going to file a motion to consolidate the cases and we see no problem with that. It was literally that one line. So unless I'll just wrap up by saying the conflict between the kind of Zalas and co-defendants interest certainly affected trial counsel's entire approach to the case, adversely affected his representation. And because of that, the circuit court's order should be reversed and this cause should be remanded for a new trial with conflict-free counsel. Thank you, counsel. Before we move on, Justice Barbera, for justice speaks, you have a question for Mr. Gonzales? None. No. All right. Thank you. And obviously you'll have your time for rebuttal. Go right ahead. Thank you, your honor. My name is, may it please the court and counsel. My name is Max Boos. I represent the people of the state of Illinois, similar to opposing counsel, I'll be focusing my time on the conflict issue and specifically the exonerating hearsay statement of co-defendant that was admitted because there of a portion of that statement being significant to its ruling. However, that's plainly a hindsight-based review of how the court ruled, not a strategic consideration of what trial counsel faced in litigating the case and finding a way to navigate the evidence. And that evidence had serious problems for litigating the case fully and proceeding other than by stipulated bench trial. Defendant was present in a vehicle transporting more than three kilograms of methamphetamine across the country, far from his home and family in Los Angeles, Illinois, to the area of Chicago, Illinois, where they were following an unknown person to an unknown location. And defendant had multiple cell phones, the one on his person ringing continuously during the traffic stop, where he displayed extreme and obvious nervousness, sweating, his heartbeat visible against his skin, and a thousand-yard stare described by the trooper who was found credible in testifying about his demeanor and suspiciousness. He also described defendant personally appearing to pray while the canine searched the vehicle. Not only did this evidence create issues in defending the case, but also law enforcement had a tip that the vehicle matched the description of defendants. It was filled with air fresheners as an obvious attempt to try to defeat a canine search. Co-defendant driver was equally nervous as defendant, also showing his heartbeat visible against the skin, his hands trembling with the dry mouth, and his legs shaking. The suspicious itinerary that was presented by either going to Illinois for demolition work of some kind, as well as the canine alert to narcotics and the recovery, showing an extremely high amount of narcotics, which itself indicates that the participants in the venture are not unwitting or unwilling participants, as per, for example, People v. Sanchez, first district case cited within the briefs. Now, that evidence made it a strategic decision whether or not trial counsel would pursue a fully contested claim of ignorance about the narcotics in the vehicle or having only a limited relationship to the vehicle that he had been in for an extended amount of time with this co-defendant. And so, trial counsel took a finding a way to present the evidence to the court that the court would be able to analyze, including a specific statement from co-defendant that defendant had nothing to do with any transaction, didn't know about any money, and was certainly unaware of any narcotics in the vehicle. Defendant challenges that by saying that, functionally, defendant should have emphasized the criminality of this co-defendant individual he willingly traveled across the country with. While you can disagree about whether or not that is a better defense, that disagreement illustrates the strategic problem that trial counsel faced and that trial counsel determined it would be better to pursue a joint stipulated bench trial and one in which it wasn't a race to the bottom on who was more criminal than the other. Now, there is a claim of defect in the representation in the context of the other evidence and the benefit of presenting evidence that defendant was not aware of anything going on. A through line in defendant's argument is that he was that this case proceeded. And specific to the evidentiary hearing where the trial court on the third stage proceedings reviewed the testimony of the trial attorney, that testimony displayed no indication that the reason why trial counsel acted was because of his obligations to co-defendant. He framed everything in terms of strategic considerations that they would have problems if they walked into a cross-examination while trying to present evidence that would exonerate or somehow exculpate the defendant. So rather than do that and risk having an emphasis of negative evidence at a contested trial, the trial attorney instead said, I'm going to focus on this suppression issue and I'm going to focus on presenting the evidence in a clean way that still gets before the trial court, that defendant never knew about the narcotics and was not involved in any illegality. The fact that the trial court then ruled against his client does not mean that there was a conflict here. Certainly the strategic concerns mean that there wasn't a defect in the representation, but also any issues that are raised here aren't attributable to a conflict. Again, the fact that he wanted to maintain an ignorance of the narcotics by both defendant and co-defendant reflects that that was the strategy that he intended to pursue and that that would be more effective than trying to dirty up one person in the vehicle while keeping the other one clean. At the same time, the fact that this was the same attorney that was hired by both does indicate that there was less of a pressure for the clients to think that they were stuck with this attorney. He was hired, not appointed, and so the classical case of the attorney being forced to represent multiple people that he had been appointed to despite a conflict of interest isn't present here. The clients had no reason to think that because they had hired one attorney they were forbidden from seeking an appointed attorney or pursuing other representation if there was this issue that they felt existed despite trial counsel's explanation of why he acted and how. Counsel, is there anywhere in the record during the proceeding prior to the stipulated bench trial that the trial court may have communicated the possibility of just having one counsel represent both defendants? There was the conversation about the possibility of a conflict that was previously discussed, but nothing specific to in treating the defendants to but the mere fact that there is joint representation doesn't create the impression of a conflict. That's permitted, and until the point where it is raised in the trial court that there is a conflict issue, there's no independent search for a conflict just on the basis of joint representation. Again, this is the matter of an actual conflict and the need to establish on defendant's part that there was a defect in representation and that the defect was attributable to a conflict and the duties to co-defendant and not some other reason. Does that resolve your question, your honor? Absolutely, thank you. All right, thank you. Beyond that, the co-defendant statement on defendant driving has three pertinent issues that I'd like to address. First, that defendant was able to submit the entirety of this statement, including specifically the claims from co-defendant that defendant was completely unaware of any illegality, which is a significant point of evidence in his favor. Additionally, the method of presenting it not only bypassed the hearsay issue in showing someone saying defendant wasn't involved with the narcotics, but also that there wasn't the ability to emphasize any contradictions or inconsistencies by the supplier of that, the co-defendant. There was no way to get co-defendant to testify and ensure that he wouldn't assert the Fifth Amendment privilege. Further, he actually indicated in the proceedings that he was pursuing his own claim of actual innocence and would not inculpate himself to defendant's benefit. Further, the positive evidence indicates that there is a strategy. There would be at most a conflict that the, or pardon me, there would be a tension that the trial attorney would have to address. Does this statement about defendant driving at some points already indicated by the fact that these two are about defendant being totally innocent? Further, the fact that there is merely some harmful evidence is not enough, excuse me, particularly given the ability to still introduce this statement as against co-defendant's interest. I do see my time has elapsed. If I, if there are any further questions or if I may have leave to conclude. Go right ahead and make any last statement you wish to make. And seeing no other questions from the justices, defendant's trial attorney gave the court evidence exonerating, attempting to exonerate his client in a way that would limit developing bad evidence and testimony. It is a trial consideration that is strategic and that is based on the strategic consideration of how best to proceed in a difficult case to defend. As such, there is no defect in representation and to the extent that counsel argues for one, it is not based on a conflict of interest, but rather a difference of strategic opinion. As such, the people ask that this court affirm. Well, thank you, counsel. Before we move on to rebuttal, just to make sure Justice Barbaras or Justice Page, do you have any questions? No, thank you. None. All right, thank you. Mr. Gonzalez, go right ahead with your rebuttal. Okay, just a couple of brief points. You know, counsel keeps coming back to this idea of strategy, but again, we still have to focus on the soundness of it and this idea that there was anything exonerating in the co-defendant's post-arrest statement. I just think it's completely absent. There was nothing significant or exonerating about simply saying that the defendant didn't know about a payment or that the defendant wasn't known to be involved in drugs. Those are just very general statements that one defendant might try to say against another. What is unsound is the fact that and what directly implicated the defendant was the fact that he shared the driving. That goes to the very heart of control of the car. It's not enough to just say, well, okay, he went cross-country from California to Illinois. Even if that were the case, without the co-defendant's statement, there'd be nothing else. It would just be the defendant's mere presence in the car, his mere proximity to the co-defendant or his mere association, nothing else. There's nothing significantly incriminating just about air pressures in and of themselves. There wasn't even any real description of where other than, okay, there's multiple ones in the vents. Okay, there's one on the car washers, give those little wafer air freshers that you put on the floor of your car. It's not that uncommon for people to have multiple air fresheners. Cell phones, okay, this is 20, what, we're in the 2000s now. I mean, everyone's got multiple or a lot of people, I would imagine, have multiple cell phones. But getting back to counsel's thinking or how his representation was diluted and the timeline where this private counsel was retained, private counsel testified that he initially was retained by the co-defendant. I don't know the exact, like how long that had been, but I got the impression from the testimony, it seemed that at least some time had elapsed from when he agreed to represent the co-defendant. And he even testified, I shaped my defense with a co-defendant in mind. By the time connoisseurs retained him, he did so through, I believe it was a mutual acquaintance or a girlfriend of the co-defendant. Now we're talking about someone who's illiterate in his native language, doesn't speak a word of English, probably has a very hard time understanding some very basic concepts. And unless the dangers and pitfalls of joint representation are explained to him in such a way as he can understand it, it doesn't really matter much whether or not this is private counsel or whether or not he, quote unquote, voluntarily retained him. There was no discussion or any there was no other exchange or any kind of indication that the defendant truly understood those pitfalls. So I just don't think there's anything there. And the defendant who did testify, of course, at the evidentiary hearing, testified that he didn't understand any of that. None of that part. It's not so much just a joint stipulated bench trial, but the pitfalls and ramifications of joint representation and that none of that was really explained to him. And I don't think there was any real contradiction to that. And the trial record certainly doesn't bear that out. And I think that's part of the problem there is whether or not the defendant, whether or not he truly understood that. I would also point to defense counsel's argument in closing, where he basically half-heartedly said, in basically one general line, that as it pertains to Konosalus, the defendant, the state didn't prove every element of his case. Well, conflict-free counsel would have separated that out, would have represented Konosalus individually and explained the stark contrasts in their positions and articulated exactly why that wasn't the case. Again, counsel wasn't able to do that. Counsel was required and had to pull his punches because by focusing solely on the co-defendant as the sole culpable party, that would certainly be antagonistic to co-defendant Gallavis. That's what conflict-free counsel would have done. Conflict-free counsel would have said, only the co-defendant, he's the sole responsible party. Defendant, not enough here for mere association just based on his mere presence in the car with air fresheners and cell phones. So I see my time is up, unless court has any other questions. No questions. None. Okay. I would just reiterate again that the post-conviction order should be reversed and this clause should be remanded for conflict-free counsel and a new trial. Well, thank you, counsel. Obviously, we will take the matter under advisement and we will issue an order in due course. I believe this concludes our court proceedings for today. So this court will stand in recess till tomorrow morning at nine o'clock. As always, as I would say, we'll take the matter under advisement, issue an order, and gentlemen, we hope you all have a great day.